FILED
MAR 20 2023
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| BRYANT KEITH YOUNG | ) | |
| | ) | Civil Action No 1:23-CV-29 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Clarksburg Division |
| WEST VIRGINIA UNIVERSITY, WEST | ) | |
| VIRGINIA UNIVERSITY BOARD | ) | |
| OF GOVERNORS, and/or DR. KATHLEEN | ) | |
| O'HEARN RYAN, | ) | |
| | ) | |
| | ) | Jury Trial Demanded |
| Defendants, | ) | |

## COMPLAINT

AND NOW COME Bryant Keith Young (the "Plaintiff") and for his Complaint against Defendants hereby aver and allege as follows:

### INTRODUCTION

1. This is a refiled action brought on behalf of Bryant Keith Young (the "Plaintiff"), against West Virginia University, West Virginia University Board of Governors and/or Dr. Kathleen O'Hearn Ryan (the "Defendants"). Plaintiff filed his initial action on March 15, 2021, against the Defendants, *Young v. West Virginia University et al*, No. 1:2021-cv-00035 (N.D.W. Va. 2022) (USDJ – T. Kleeh). The case was ***DISMISSED WITHOUT PREJUDICE***. Plaintiff is refiling his claim.

### PARTIES

2. The plaintiff, Bryant Keith Young is an adult individual who is from New York City and now resides in Houston, Texas. At all times material to the claims asserted in this Complaint, Plaintiff was enrolled as a student at West Virginia University in Spring 2020. Plaintiff

graduated in the Fall Semester of 2020 with a Bachelor of Arts degree. Plaintiff then enrolled as a graduate student at West Virginia University in 2021. Plaintiff graduated in the Summer Semester of 2022 with a Master's Degree (MBA).

3. The defendant, West Virginia University, and/or West Virginia University Board of Governors is an educational institution duly authorized to conduct business, as such, under the laws of the State of West Virginia.

4. The defendant, Professor Dr. Kathleen O'Hearn Ryan ("Dr. Ryan") is an individual who resides in Morgantown, West Virginia. At all times material to the claims asserted in this Complaint, Dr. Ryan was and continues to be a professor at West Virginia University in the English Department.

5. At all times relevant hereto, the defendants, West Virginia University, West Virginia University Board of Governors, and Dr. Ryan were acting by and through its duly authorized agents, and/or employees, who were then and there acting within the course and scope of their employment, and under the color of state law.

**JURISDICTION AND VENUE**

6. The claims made in this Complaint are brought pursuant to The Civil Rights Act of 1964 prohibits discrimination based on race, color, religion, sex, or national origin (Public Law 88-352 (78 Stat. 241)). A substantial portion of the events giving rise to the claims asserted in this Complaint occurred in this federal district, in Morgantown, West Virginia, and therefore venue lies in this District under West Virginia Code 55 7 29.

7. The Plaintiff was falsely accused, interrogated, and investigated on account of his race and his age. The co-defendant, Dr. Kathleen O'Hearn Ryan, violated the plaintiff's rights under the First Amendment of the United States Constitution – Freedom of Speech, Article III,

2

Section 7 of the West Virginia Constitution - Freedom of Speech and Press Guaranteed, 34 CFR Part 110 – Age Discrimination and 34 C.F.R. Part 100 – Race Discrimination.

**STATEMENT OF CLAIM**

8. Along with being a student at West Virginia University, Plaintiff is a SAG-AFTRA union actor and minored in Theater Arts at the college level. Plaintiff even had an integral role in an independent faith-based play/film called "Who Did I Marry?" released in 2013. This production appeared on Netflix and can currently be seen on the streaming TV service, "Tubi." The Plaintiff played the role of a pastor. Plaintiff also sometimes film, shoot and direct his independent short films.

9. When Plaintiff first transferred to West Virginia University as an undergraduate student, he was a theater major. After completing six (6) credits in theater, Plaintiff decided to switch his major to English, because English is closely tied to theater.

10. In the spring semester of 2020, Plaintiff was enrolled in English 200, which was Dr. Ryan's class. Plaintiff asked several female students in English 200 if they would like to receive a role in an independent short film that was rated PG that he was going to shoot in West Virginia. Plaintiff also asked several male students (that were not students in English 200) and they willingly agreed. The female students willingly and verbally agreed to be a part of this project. Plaintiff even took one of the female students out to lunch to discuss the role and in the agreement that she would appear in his project.

11. On or around early March 2020, Dr. Ryan called Plaintiff into her office. Dr. Ryan is an English professor, so Plaintiff assumed the discussion would be about his performance in her class. The discussion was not about English instead, it was about some false accusations that were

3

made against him. It puzzled Plaintiff as to why Dr. Ryan would be discussing something other than the course.

12. Dr. Ryan automatically stated to Plaintiff that she received complaints that he [Plaintiff] was "pressuring" some female students to be a part of a short film. Plaintiff told Dr. Ryan that the accusations were false. Plaintiff also told Dr. Ryan that the students willingly agreed to be a part of his project and that he saw talents in these students. Dr. Ryan suddenly responded, "Well, let them use that talent for something else." With that response, Plaintiff believes that Dr. Ryan had already decided that Plaintiff was guilty of something and that he [Plaintiff] was pressuring the students without giving him any due process.

13. From this point on, Plaintiff noticed a change of behavior towards him by Dr. Ryan and several of the female students in the course. In one instance, Dr. Ryan stated that she did not want Plaintiff to write a poem for a class assignment of a sexual nature. Ironically, Dr. Ryan read a Shakespeare poem with sexual connotations to the class and asked the class to write a poem as part of the assignment. When reviewing Plaintiff's poem, Dr. Ryan stated to Plaintiff, "due to the climate, you should not read a poem with sexual innuendos." Plaintiff ultimately had to rewrite his poem as a result. Plaintiff wrote his initial poem with sexual innuendos because Dr. Ryan had read a Shakespearean passage with sexual innuendos, which encouraged the Plaintiff that this type of poem was okay.

14. Dr. Ryan did not want Plaintiff to write a poem with sexual innuendos because it appeared that she had decided Plaintiff was a sexual deviant and that Plaintiff committed sexual malfeasance and that the students would be offended. Plaintiff has no history of any sexual malfeasance, no criminal record or no drug history of any kind.

15. Also, Plaintiff noticed that some of the female students, once very friendly and cordial, seemed distant towards Plaintiff. Dr. Ryan called Plaintiff into her office and she was conducting her investigation and was trying to make Plaintiff appear as a sexual deviant. Plaintiff learned that Dr. Ryan also called all of the female students (even the female students who were never asked to be a part of his project) to her office and asked did Plaintiff do anything to make them uncomfortable or did he commit any sexual malfeasance against them. She then warned them to "be careful" in Plaintiff's presence and she discouraged any interaction with him. One of the female students even confided in the Plaintiff and told him that all the female students had nothing but "positive" things to say about him.

16. Furthermore, Dr. Ryan told the female students who agreed to participate in Plaintiff's short film to not be involved in Plaintiff's project or anything that had nothing to do with English, as if Plaintiff was a criminal and as if they would be in imminent danger. The Plaintiff initially selected the female students because this was an English class and theater and English are very closely tied together. Plaintiff has been acting since middle school. When Plaintiff joined his middle school drama club, the faculty advisor was a conservative teacher who was the head English teacher in the English Department. The Plaintiff also was told by a head English teacher in high school [Springfield Gardens High School] (after reading a play) that he was talented enough to be a part of Springfield Gardens High School Performing Arts Center. What the Defendant does not understand is that the reason why the Plaintiff switched from theater to English is because they are closely tied together. Even while the Plaintiff was in graduate school (the MBA program), he had galvanized a few students and mentioned his idea for a short film. Despite their interests, he could not bring himself to implementing the project, due to it not being an English course. The Plaintiff feels he just did not feel the same inspiration.

17. Since Dr. Ryan was falsely accusing, interrogating, and investigating him, Plaintiff requested an investigation into this matter with the Office of Student Conduct on or around July 2020. Plaintiff wanted an investigation of the student(s) who lied on him (false accusation) and stated that he was pressuring them.

18. Carrie Showalter ("Showalter") and Jill Gibson ("Gibson") from the Office of Student Conduct stated that after some research, there was never a complaint made against Plaintiff. Plaintiff told them that the student(s) must have complained to Dr. Ryan and Showalter and Gibson continued to state that there was no complaint against Plaintiff.

19. Dr. Ryan also stated that a student complained to a colleague of hers (a professor). Dr. Ryan then stated that the student and the colleague subsequently came to her; but Dr. Ryan never gave Plaintiff the name of this so-called colleague and/or professor, even after Plaintiff made a request to Showalter and Gibson for her to do so. Yet, Showalter and Gibson said there was no complaint against Plaintiff. All parties appear to be contradicting themselves and untruths are being told.

20. Along with Showalter and Gibson stating that there were never any complaints made against Plaintiff, Dr. Ryan also went to West Virginia University's Title IX Sexual Misconduct Department on her own to have Plaintiff investigated. She subsequently met with the Director of Equity Assurance/Title IX Coordinator (Sexual Misconduct), James Goins Jr. ("Mr. Goins").

21. Around July 2020, Plaintiff contacted James Goins. Mr. Goins stated that Dr. Ryan came to him to try to get him to investigate Plaintiff for sexual misconduct and he denied her request. Mr. Goins also stated that Plaintiff's actions did not constitute any actions of sexual

6

misconduct. Yet, Dr. Ryan called Plaintiff into her office to accuse him of "pressuring" the female students. Dr. Ryan disregarded Title IX's instructions not to investigate him.

22. **AGE DISCRIMINATION**: it is the Plaintiff's opinion that Dr. Ryan implemented these actions due to him being a much older student, which constitutes age discrimination. The traditional-aged student is between 18-23 years of age. Plaintiff is 58 years old. Plaintiff feels that his age is a direct cause of Dr. Ryan's actions, performing her own investigations and accusing him of doing something wrong by asking female students to be a part of his film project. In any case, the female students all stated that they enjoy Plaintiff's presence and their class, yet, Dr. Ryan kept investigating him as if he was a criminal. Plaintiff would like the court to note that throughout this entire process, Dr. Ryan was complementing him, telling him that she is glad that he is in her class and that he brings a different "light" to his class, all while investigating him as if he was a criminal. Her conniving and unethical behavior is obvious in this case.

23. **RACE DISCRIMINATION**: Plaintiff is African American. Plaintiff feels that if he were not African American, Dr. Ryan's actions would have been different and she would not have taken any actions at all. This constitutes racial discrimination. There were also other instances, which will be expressed at a later date, which prove that Plaintiff was discriminated against, due to his race.

24. **DEFAMATION**: it is Plaintiff's opinion that Dr. Ryan took the liberty of having him investigated, which ultimately led to defamation and slander. The false statements made against Plaintiff about "pressuring" the female students to be part of a film project that was a short film and PG-rated. Then when Dr. Ryan took the liberty of investigating Plaintiff on her own accord caused Plaintiff's reputation in both the class and the school to be defamed.

7

## QUESTIONS

25. Why would Dr. Ryan try to have the Plaintiff investigated for sexual misconduct, if, according to the Student Misconduct Department (Showalter and Gibson), there were no complaints from any student?

26. The Student Misconduct Dept. (Showalter and Gibson) did not investigate any student complaining after Plaintiff asked for an investigation of anyone who made false complaints against him to any department, as well as to Dr. Ryan? For the Department not to investigate any false complaint, this non-action concluded that there was no complaint. Plaintiff even has evidence from Showalter and Gibson that there was no complaint; so why did Dr. Ryan attempt to get Plaintiff investigated for sexual misconduct with the Title IX Department and Mr. Goines, in which he refused?

## RELIEF

27. As a direct and proximate result of the discriminatory conduct to which Plaintiff was subjected, Plaintiff suffered embarrassment, humiliation, and emotional distress.

28. Plaintiff suffered defamation, was falsely accused and suffered damage to his reputation.

29. Plaintiff experienced racial discrimination because he is African American.

30. Plaintiff seeks punitive damages according to proof, the cost of the lawsuit, and whatever else the court sees just and fit to award. Plaintiff seeks payment of $75,000.00 (Seventy-Five Thousand Dollars and Zero Cents).

31. Plaintiff seeks an opportunity for his day in court due to having a lot of evidence available that will confirm the discrimination and victimization of his person.

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment in his favor for punitive damages, costs, and attorney's fees, and to award such other equitable relief as is appropriate and just under the circumstances.

Dated: March 14, 2023

                                        Respectfully submitted,

                                        */s/ Bryant Keith Young*
                                        Bryant Keith Young, *Pro Se*
                                        Quillove@aol.com
                                        3000 Greenridge Drive, Apt. 1638
                                        Houston, TX 77057
                                        Phone: (347) 684-6738