**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

BRYANT KEITH YOUNG,

      **Plaintiff,**

v.                                                              **Civil Action No. 1:23-CV-29**
                                             **(JUDGE KLEEH)**

WEST VIRGINIA UNIVERSITY,
WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, and
DR. KATHLEEN O'HEARN RYAN,

      **Defendants.**

## REPORT AND RECOMMENDATION RECOMMENDING THAT PLAINTIFF'S MOTION [ECF NO. 15] FOR LEAVE TO FILE AN AMENDED COMPLAINT BE DENIED AND DEFENDANTS' MOTION TO DISMISS [ECF NO. 12] BE GRANTED

This matter is before the undersigned Magistrate Judge by Referral Order [ECF No. 5] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on March 20, 2023. By the Referral Order, Chief Judge Kleeh ordered the undersigned to issue written orders or reports and recommendations, as appropriate, and to dispense with other matters that arise.

### I.       PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, brings this case to lodge civil rights claims based allegations of events arising during Plaintiff's enrollment as a student at West Virginia University.

Plaintiff, *pro se*, previously brought a similar matter in this District, bearing Case No. 1:21-CV-35. In that prior matter, Plaintiff filed a Complaint against the same Defendants as those who are named in the instant matter. In that prior matter, the Hon. Thomas S. Kleeh, the presiding District Judge, ultimately adopted a Report and Recommendation submitted by the undersigned Magistrate Judge. In so doing, the Court granted Defendants' amended motion to dismiss, thus dismissing the action and striking it from the Court's active docket. Specifically, the Court

1

dismissed Plaintiff's procedural due process claim under 42 U.S.C. § 1983, Plaintiff's First Amendment claim under 42 U.S.C. § 1983, Plaintiff's age discrimination claim, and Plaintiff's race discrimination claim, all <u>without prejudice</u>. Plaintiff's claim under 18 U.S.C. § 287 claim was dismissed <u>with prejudice</u>.

On March 20, 2023, Plaintiff filed the instant matter against the same Defendants. [ECF No. 1]. On May 11, 2023, Defendants filed a motion to dismiss and memorandum in support, thereof. [ECF Nos. 12, 13]. On May 17, 2023, the Court entered a Roseboro Notice [ECF No. 14] concerning Defendants' motion to dismiss; Plaintiff accepted service [ECF No. 21] of the Roseboro Notice on May 25, 2023. In the meantime, on May 22, 2023, Plaintiff filed a motion [ECF No. 15] to file an Amended Complaint. Moreover, Plaintiff filed a response [ECF No. 18] to Defendants' motion to dismiss [ECF No. 12] on June 2, 2023. Also on June 2, 2023, Defendants filed a response [ECF No. 19] in opposition to Plaintiff's motion [ECF No. 15] to file an Amended Complaint. On June 9, 2023, Defendants filed a reply [ECF No. 22] in support of their motion to dismiss. Finally, on June 26, 2023, Plaintiff filed what the undersigned construes as a sur-response, but is styled as a "reply," in opposition to Defendant's motion to dismiss.

For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that Plaintiff's motion to file an Amended Complaint [ECF No. 15] be **DENIED**. Additionally, the undersigned respectfully **RECOMMENDS** that Defendants' motion to dismiss [ECF No. 12] be **GRANTED**, and that Plaintiff's Complaint [ECF No. 1] be **DISMISSED with prejudice**.

## II.   FACTUAL ALLEGATIONS

The following is a summary of the factual allegations set forth in the Complaint.

Plaintiff alleges in the Complaint that he is an African American man, age 58, and is and SAG-AFTRA union actor. [ECF No. 1, at 3, 7]. He alleges that was enrolled as an undergraduate

student at Defendant West Virginia University ("WVU") in Morgantown, West Virginia for the Spring 2020 semester. Id., at 3. In particular, he alleges that was enrolled in an English 200-level course taught by Defendant Dr. Kathleen O'Hearn Ryan ("Dr. Ryan"), a professor at WVU. Id.

During this semester, Plaintiff asked a number of WVU students, including several female students in the English course, whether they would like to participate in an independent short film project which Plaintiff was spearheading. Id.  In March of 2020, Dr. Ryan called Plaintiff into her office, where she informed Plaintiff that she had received complaints that he was pressuring some female students to be part of the film. Id., at 3-4. Plaintiff responded that the allegations were false, that the students were talented and agreed to participate. Id., at 4. Dr. Ryan responded to Plaintiff, "Well, let them use that talent for something else." Id.

Plaintiff eventually noticed that female students in the English class changed their attitudes toward him and were distant. Id., at 5. Plaintiff claims that Dr. Ryan warned female students away from him and dissuaded them from interacting with him. Id. Later, Plaintiff learned that Dr. Ryan summoned all of the female students to her office and inquired about Plaintiff's behavior toward them. Id. Dr. Ryan discouraged those students who had agreed to participate in Plaintiff's film project, intimating that Plaintiff was dangerous. Id.

Plaintiff states that Dr. Ryan directed him to not write poetry of a sexual nature, and he therefore had to rewrite a poem. Id., at 4. Plaintiff states that his poem initially contained sexual innuendo because of a Shakespeare poem which Dr. Ryan read to the class. Id.

In approximately July of 2020, Plaintiff requested that WVU's Office of Student Conduct investigate any student(s) who had purportedly claimed that Plaintiff had pressured them into participating in the film project. Id., at 6. Representative from the Office of Student Conduct told Plaintiff that there was no complaint lodged against him. Id. Also, Plaintiff communicated with

3

James Goins, Jr. ("Mr. Goins"), Director of Equity Assurance/Title IX Coordinator (Sexual Misconduct) at WVU. Id., at 6-7. Mr. Goins informed Plaintiff that Dr. Ryan attempted to have Mr. Goins investigate Plaintiff for sexual misconduct but that Mr. Goins denied her request. Id. Mr. Goins said that Plaintiff's conduct did not amount to sexual misconduct. Id.

Plaintiff claims that Dr. Ryan acted detrimentally toward him on the basis of his age and the basis of his race. Id., at 7. He also claims that Dr. Ryan abridged his freedom of speech because she discouraged him from writing and reading poetry. As a result of both the discriminatory conduct and false allegations he alleges, Plaintiff claims that he suffered defamation, as well as embarrassment, humiliation, and emotional distress. Id., at 7-8. Plaintiff seeks money damages, fees and costs, and other relief. Id., at 8-9.

### III.   PARTIES' CONTENTIONS

In his Complaint, reading it most favorably to Plaintiff, Plaintiff seems to articulate four causes of action: (1) age discrimination, in violation of the 1964 Civil Rights Act, (2) race discrimination under that same Act, (3) denial of his freedom of speech, in violation of 42 U.S.C. § 1983, and (4) defamation.

In response, Defendants argue that the claims for age and race discrimination are not ripe, because Plaintiff failed to exhaust administrative remedies, and that in any event, Plaintiff does not set forth factual allegations sufficient to support a reasonable inference of discrimination on the basis of age and race. Next, Defendants argue that the freedom of speech claim should be dismissed because (a) Defendants enjoy sovereign immunity and (b) Defendants WVU and West Virginia University Board of Governors ("WVUBOG") are not "persons" subject to 42 U.S.C. § 1983. And finally, Defendants argue that the defamation claim is time-barred by the one-year

statute of limitations applicable to such a cause of action, and that, in any event, Plaintiff does not articulate a defamation claim upon which the Court may grant relief.

Additionally, by his motion to file an Amended Complaint [ECF No. 15], Plaintiff seeks to lodge due process claims under the Fourteenth Amendment. Defendants oppose [ECF No. 19] the motion to amend, arguing that it fails to correct deficiencies with the claims lodged in the initial Complaint. Defendants also argue the proposed additional due process claim is deficient because Defendants enjoy Eleventh Amendment immunity and because it fails to set forth the particular facts necessary to sustain such a claim. [ECF No. 19].

### IV. LEGAL STANDARDS

#### A.  Review of *pro se* claims

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

#### B.  Standard for Amending a Complaint

Parties seeking leave to amend a complaint enjoy some latitude to do so. Leave to amend should be denied only when the amendment would result in undue delay, the amendment would be unduly prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile. Foman v. Davis, 371 U.S. 178, 182 (1962). The Fourth Circuit elaborated on this standard by limiting conjecture about the merits of litigation

"unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980).

### C.  Pleading Standard Required to State a Claim for Relief

To state a claim for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to give "the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and quotation omitted).

Moreover, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id., at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To be sure, detailed factual allegations are not necessarily required. Twombly, 550 U.S. at 555. The factual allegations simply must be "enough to raise a right to relief above the speculative level." Id. The "sheer possibility that a defendant has acted unlawfully" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facial plausibility is established when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so

long as "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)).

When rendering its decision, a court should consider "only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice." Conklin v. Jefferson Cty. Bd. of Educ., 205 F. Supp. 3d 797, 803 (N.D.W. Va. 2016) (citing Anheuser–Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). A court should grant a motion to dismiss where the complaint is insufficient to state a claim to relief, outlined by factual allegations, that is plausible on its face.

## V. ANALYSIS

**A. The undersigned recommends that Plaintiff's § 1983 First Amendment/freedom of speech claim be dismissed because of Defendants' Eleventh Amendment Immunity and a failure to allege facts supporting the claim; further, the undersigned recommends denial of Plaintiff's Motion for Leave to File Amended Complaint [ECF No. 15] for the same reasons.**

Under 42 U.S.C. § 1983, individuals may bring federal claims for violations of their constitutional rights. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Plaintiff claims his Complaint that Dr. Ryan violated his freedom of speech as guaranteed by the First Amendment. Defendants argue that Plaintiff's § 1983 claim must be dismissed because Defendants are entitled to immunity under the Eleventh Amendment and that no Defendant herein is a "person" for the purposes of § 1983.

*1.  Eleventh Amendment Immunity and Personhood*

The Eleventh Amendment to the United State Constitution provides for state sovereign immunity:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI, § 1. See also Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, (1996) ("[F]ederal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'") (internal citation omitted).

The Supreme Court of the United States has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation ...." Hunter v. Bryant, 502 U.S. 224, 227 (1991). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). Eleventh Amendment immunity is a defense with "attributes of both subject-matter jurisdiction and personal jurisdiction." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th 2005). Thus, an Eleventh Amendment defense may be addressed via a motion to dismiss for lack of subject matter under Fed. R. Civ. P. 12(b)(1), or for failure to state a claim pursuant to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Sarkissian v. W. Virginia Univ. Bd. of Governors, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *3 (N.D.W. Va. May 3, 2007)

The Eleventh Amendment generally bars individuals from filing suit against a State "unless the State has waived its immunity, . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (internal citations omitted). The Supreme Court has "made clear" that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]" Id. (citing Quern v. Jordan, 440 U.S. 332 (1979)). Sarkissian, 2007 WL 1308978, at *4 ("It is well established that Congress did not abrogate the Eleventh Amendment immunity of states when it enacted 42 U.S.C. § 1983.").

Courts have "almost universally" recognized that public state universities are "arms of the state." Maryland Stadium Authority v. Ellerbe Becket Incorporated, 407 F.3d 255, 262 (4th Cir. 2005). See also W. Virginia Univ. Bd. of Governors ex rel. W. Virginia Univ. v. Rodriguez, 543 F. Supp. 2d 526, 531 n. 3 (N.D.W. Va. 2008) (citing precedent from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).

This Court, and others, have specifically and repeatedly held that the WVUBOG is immune from suit under the Eleventh Amendment. See Id., at 535 ("West Virginia University and its Board of Governors are arms and alter egos of the State of West Virginia[.]"); Al-Asbahi v. W. Virginia Univ. Bd. of Governors, No. 1:15CV144, 2017 WL 402983, at *10 (N.D.W. Va. Jan. 30, 2017), aff'd, 724 F. App'x 266 (4th Cir. 2018)("[I]t is beyond argument that the WVU Board is immune under the Eleventh Amendment from all . . . claims, both legal and equitable."). Similarly, Marshall University enjoys the same Eleventh Amendment immunity. See Klug v. Marshall Univ. Joan C. Edwards Sch. of Med., No. CV 3:18-0711, 2019 WL 1386403, at *9 (S.D.W. Va. Mar. 27, 2019) (plaintiff's breach of contract claim barred by the Eleventh Amendment); Zimmeck v. Marshall Univ. Bd. of Governors, No. CIV.A. 3:13-14743, 2013 WL 5700591, at *6 (S.D.W. Va. Oct. 18,

2013) ("As an 'arm of the state,' the Marshall University Board of Governors has Eleventh Amendment immunity from Plaintiff's § 1983 claims.").

Further, "[j]ust as the State is immune from suits brought under § 1983, likewise are state officials acting in their official capacities immune." Zimmeck, 2013 WL 5700591, at *6. See generally Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is no different from a suit against the State itself." Therefore, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Jemsek v. Rhyne, 2016 WL 5940315, at *3 (4th Cir. 2016) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).

Here, clear precedent dictates that WVU and the WVUBOG, as arms of the state, are immune under the Eleventh Amendment from § 1983 claims. Such immunity also extends to Dr. Ryan as a state official. And Defendants are not "persons" within the meaning of § 1983. Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss [ECF No. 12] be **GRANTED** and Plaintiff's § 1983 claim be **DISMISSED**.

   *2.  First Amendment Claim*

Plaintiff alleges that Dr. Ryan violated his freedom of speech rights, as protected by the First Amendment of the U.S. Constitution and Article III, Section 7 of the West Virginia Constitution, by requiring Plaintiff to rewrite a poetry assignment.

 It is well established that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). However, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."

Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988). Federal courts "do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104 (1968).

In the comparable case of Pompeo v. Bd. of Regents of the Univ. of New Mexico, 852 F.3d 973, 985 (10th Cir. 2017), the U.S. Court of Appeals for the Tenth Circuit held that a college instructor was able to restrict a student's speech by asking the student to rewrite an assignment where the instructor believed the student's speech was offensive or inflammatory and where the instructor's actions were objectively "related to a legitimate pedagogical goal." Specifically, in Pompeo, the college instructor found the sexual language used by the student in the assignment to be inappropriate, possibly disruptive and inflammatory, and told the student that strong statements critiquing lesbianism must be supported by critical analysis. Pompeo, 852 F.3d, at 979-980. The Tenth Circuit, in affirming the district court's grant of summary judgment in favor of the defendants, wrote that "[s]hort of turning every classroom into a courtroom, we must 'entrust[ ] to educators these decisions that require judgments based on viewpoint.'" Pompeo, 852 F.3d at 989–90 (quoting Fleming v. Jefferson Cty. Sch. Dist. R-1, 298 F.3d 918, 926, 934 (10th Cir. 2002)).

Here, based on the alleged facts put forth in the Complaint, Dr. Ryan reviewed Plaintiff's poem and concluded "due to the climate, you should not read a poem with sexual innuendos." [ECF No. 1, at 4]; Plaintiff was required to rewrite his poem as a result. The precedent set by the Supreme Court and the persuasive analysis put forth by the Tenth Circuit are applicable here. Plaintiff does not make a compelling case to intervene in the daily operations of college courses, especially where the actions complained of do not directly and sharply implicate basic constitutional values. While Plaintiff was required to write his classroom assignment, which may

feel unfair or censorial, a plain reading of Plaintiff's own Complaint demonstrates that Dr. Ryan

had an objective, legitimate pedagogical concern regarding the classroom climate.

In view of seminal caselaw for this context, the Complaint does not provide sufficient facts

for the undersigned to draw the reasonable inference that Defendants are liable for a First

Amendment violation. Consequently, the undersigned **RECOMMENDS** that Defendant's Motion

to Dismiss [ECF No. 12] be **GRANTED** to the extent that Plaintiff fails to state a First Amendment

claim upon which relief may be granted.

3. *Plaintiff's Motion for Leave to File Amended Complaint and the Addition of a Fourteenth Amendment Due Process Claim*

Conjecture regarding the merits of a proposed amendment to pleadings is limited to

instances where the amendment "may clearly be seen to be futile because of substantive or

procedural considerations." Davis, 615 F.2d at 613 (4th Cir. 1980). The proposed amendment in

the case at hand falls under this category of clearly futile amendments. As outlined below,

Plaintiff's proposed amendment to his Complaint does not cure any of the deficiencies present in

the claims in the original Complaint. And the proposed addition of the Due Process Claim pursuant

to the Fourteenth Amendment and 42 U.S.C. § 1983 is factually insufficient in the specific context

of this type of claim.

First, as to the claims lodged in the original Complaint (and essentially repeated in the

proposed Amended Complaint) to grant the motion to amend [ECF No. 15] would be to require

Defendants, unfairly, to refile and relitigate their Motion to Dismiss. As set forth in this Report

and Recommendation, the claims lodged in the original Complaint do not pass muster. Thus,

allowing Plaintiff to file the Amended Complaint – which does not correct those deficiencies –

would waste the resources of both the parties and of this Court.

Second, a straightforward review of the proposed new claim under the Fourteenth Amendment reveals the claim to be fatally deficient. Construing Plaintiff's proposed Amended Complaint liberally, he asserts that as a result of the Defendants' actions, he was deprived of a constitutionally protected liberty interest in his reputation and suffered an interference with a property interest in his education. See e.g. ECF No. 15-1, at 8-9 (Plaintiff describing how formerly friendly female classmates acted "distant" because Dr. Ryan called these students into her office and warned them about Plaintiff and interactions with him)]; ECF No. 15-1, at 8 ("Plaintiff ultimately had to rewrite his poem [assignment] as a result."). Plaintiff further alleges his due process rights were denied by WVUBOG because he was not able to explain his situation in a hearing. [ECF No. 15-1, at 11].

The Fourteenth Amendment to the United State Constitution provides that a State may not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. In order to prevail on a procedural due process claim, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012) (quoting Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir.2011)).

"To have a property interest subject to procedural due process protection, an individual must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." Huang v. Bd. of Governors of Univ. of N. Carolina, 902 F.2d 1134, 1141 (4th Cir. 1990) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Bradley v. Colonial Mental Health & Retardation Servs. Bd., 856 F.2d 703, 707 (4th Cir.1988)); see also Board of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 82 (1978) (noting that "property interests are creatures

of state law" which must be recognized by the relevant state); <u>Trotter v. Regents of Univ. of New Mexico</u>, 219 F.3d 1179, 1184 (10th Cir. 2000) (same).

The Supreme Court of Appeals of West Virginia has long recognized that a student has "a sufficient property interest in the continuation and completion of his medical education to warrant the imposition of minimal procedural due process protections." <u>Evans v. West Virginia Bd. Of Regents</u>, 271 S.E.2d 778, 780 (W.Va. 1980) (citing <u>State ex. rel. McLendon v. Morton, W. Va.</u>, 249 S.E.2d 919 (W. Va. 1978); <u>North v. West Virginia Board of Regents</u>, 233 S.E.2d 411 (W. Va. 1977)). In <u>North</u>, the court reasoned that the plaintiff's "interest in obtaining a higher education with its concomitant economic opportunities, coupled with the obvious monetary expenditure in attaining such education, gives rise to a sufficient property interest to require procedural due process on a removal." 233 S.E.2d at 415. This Court has interpreted that "that same reasoning applies across any discipline," regardless of what a claimant may be studying. <u>Al-Asbahi</u>, No. 1:15CV144, 2017 WL 402983, at *11. In other words, there are minimal due process protections for the property interest that is the pursuit of a higher education.

In contrast, precedent counsels against recognizing reputation *by itself* as a liberty interest protected under the Due Process Clause. <u>Siegert v. Gilley</u>, 500 U.S. 226, 233 (1991). ("[I]njury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause].") <u>Shirvinski</u>, 673 F.3d at 314 (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701, (1976); <u>Daniels v. Williams</u>, 474 U.S. 327, 332 (1986)) (The Supreme Court "has repeatedly admonished judges to be wary of turning the Due Process Clause into 'a font of tort law' by permitting plaintiffs to constitutionalize state tort claims through artful pleading.")

Accordingly, "a plaintiff must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed."

Shirvinski, 673 F.3d at 315 (citing Paul, 424 U.S. at 711). This is known as the "stigma plus" standard because it "requires a reputation injury (the stigma), accompanied by a state action that distinctly altered or extinguished a legal status or right (the plus)." Doe v. Alger, 175 F. Supp. 3d 646, 660 (W.D. Va. 2016) (citing Shirvinski, 673 F.3d at 315.). See also Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 (4th Cir. 2006).

When applying these standards in the case of Logar v. W. Virginia Univ. Bd. of Governors, No. 1:13-CV-145, 2013 WL 4501052, at *12 (N.D.W. Va. Aug. 21, 2013), this Court held that a stigma-plus claim was unavailable to a plaintiff where the plaintiff failed to identify any specific defamatory statements. The Court further held that a university's failure to abide by its own guidelines and regulations does not, in itself, constitute a due process violation. Id. (citing Goodrich v. Newport News School Bd., 743 F.2d 225, 227 (4th Cir.1984)).

Here, like Logar, Plaintiff fails to specify any defamatory statements that were published. Plaintiff asserts that Dr. Ryan had internally determined Plaintiff was a "sexual deviant" and began her "investigation" accordingly, but there are no factual allegations that any Defendants uttered or published any false statements that are derogatory as to cause a reputation harm. At most, taking the alleged facts as true, Dr. Ryan asked female students their impression of Plaintiff and Dr. Ryan inquired internally into suspected sexual misconduct. Plaintiff does not show how this amounts to utterance of the type of statement required to meet the first prong of the stigma-plus test.

Further, Plaintiff fails to show any injury that resulted because of alleged the state action, failing the second prong of the stigma-plus test. Plaintiff asserts an ambiguous possibility of a harm. See e.g. ECF No. 1, at 7 (This "situation could have been really detrimental to the Plaintiff's reputation, as well as his person."). Even if any Defendant was inconsistent or deviated from the institution's own procedures in terms of the investigation into this matter, Defendants' conduct as

alleged does not rise to the level of a due process violation. After all, per Plaintiff's own allegations, the Office of Student Conduct stated there were no complaints made against Plaintiff, and the Director of Equity Assurance/Title IX Coordinator told the Plaintiff his actions did not constitute sexual misconduct.

Additionally, Plaintiff does not allege an interference with his property interest in education sufficient to state a due process claim. Generally, an action causing interference with one's educational property interest triggering a due process claim would be an action interfering with the continuation or completion of one's education, such as the suspension or expulsion of a student without proper procedure. Here, Plaintiff alleges he was required to rewrite a poetry assignment at Dr. Ryan's direction. However, despite this, Plaintiff was able to complete his English course, graduate in Fall 2020, and has since completed a graduate program at the same institution. Plaintiff alleges no interference with the continuation or completion of his education. Plaintiff puts forth no factual allegations that his educational property interest was harmed or disadvantaged by state actions.

Thus, the undersigned **FINDS** that the proposed amendment to Plaintiff's Complaint is futile and sets forth no cognizable  due process injury under the Fourteenth Amendment, and thus **RECOMMENDS** that Plaintiff's Motion for Leave to File Amended Complaint [ECF No. 15] be **DENIED**. Further, the undersigned **FINDS** that Plaintiff's claims under § 1983 are factually deficient and cannot withstand Eleventh Amendment immunity, and thus **RECOMMENDS** that Defendants' Motion to Dismiss [ECF No. 12] be **GRANTED** and Plaintiff's § 1983 claims be **DISMISSED**.

**B.  The undersigned recommends Plaintiff's Age Discrimination Act ("ADA") claims be dismissed because of a failure to exhaust administrative remedies and a failure to allege enough facts to state a claim to relief that is plausible on its face.**

In Paragraph 22 of the Complaint, Plaintiff asserts a claim of age discrimination in violation of 34 C.F.R. § 110. Defendants argue that Plaintiff's age discrimination claim should be dismissed because Plaintiff is seeking compensatory rather than injunctive relief, Plaintiff has not exhausted his administrative remedies as required, and Plaintiff has not alleged facts sufficient to support a plausible claim of age discrimination.

*1.  Relief Sought*

The federal regulation under which Plaintiff would proceed, 34 C.F.R. § 110, was promulgated in order to outline the United States Department of Education's "rules for implementing the Age Discrimination Act of 1975." 34 C.F.R. § 110.1. The Age Discrimination Act of 1975 ("ADA") provides "[n]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102, et seq. Alternatively put, a recipient of federal financial assistance may not "use age distinctions or take any other actions which have the effect, on the basis of age, of . . . [d]enying or limiting individuals in their opportunity to participate in any program or activity receiving Federal financial assistance." 45 C.F.R. § 90.12(b)(2).

The ADA provides a limited private right of enforcement that is confined to injunctive relief against the entity that receives federal funds. See Tyrrell v. City of Scranton, 134 F. Supp. 2d 373, 381–84 (M.D. Pa. 2001). Specifically, § 6104(e)(1) provides individuals may bring suit "to enjoin a violation of this Act by any program or activity receiving Federal financial assistance" and further provides that plaintiffs who prevail may receive "the costs of suit, including a

reasonable attorney's fee[.]" 42 U.S.C. § 6104(e)(1). Other district courts have reasoned that Congress purposely excluded a private right of action to seek monetary damages under the ADA. See e.g. Tyrrell, 134 F. Supp. 2d  at 383 ("In the context of this detailed remedial scheme, in which Congress has expressly provided for administrative remedies as well as a private right to seek injunctive relief, Congress' failure to mention a private right to seek damages weighs heavily against the judicial implication of such a remedy.").

In the instant case, Plaintiff is seeking punitive damages, costs and fees associated with bringing this action, payment of $75,000.00, and any other award(s) that the Court deems just and proper. [ECF No. 1, at 8]. The ADA does not support an action for damages. The undersigned thus **RECOMMENDS** that Defendants' motion to dismiss [ECF No. 12] be **GRANTED** to the extent Plaintiff seeks damages under the ADA. Even reading the *pro se* Complaint most liberally, with regard to any remaining claims under the ADA for equitable or injunctive relief, the undersigned further **FINDS** they too must be dismissed for failure to exhaust and failure to state a claim as articulated below.

*2.   Failure to Exhaust*

Under the ADA "[n]o action ... shall be brought ... if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). The Department of Education requires all complaints to be filed "within 180 days from the date the complainant first had knowledge of the alleged discrimination." 34 C.F.R. § 110.31(a). See Kamps v. Baylor Univ., 592 F. App'x 282, 285 (5th Cir. 2014) (dismissing ADA claim where plaintiff had not filed a complaint with the Department of Education in compliance with their requirements prior to filing suit).

In this instance, Plaintiff alleges that the first instances of age discrimination occurred in March 2020 when Dr. Ryan began "performing her own investigations and accusing him of doing

something wrong by asking female students to be part of film project[.]" [ECF No. 1, at 7]. Defendants argue that Plaintiff failed to exhaust administrative remedies as required, by filing a complaint with the Department of Education prior to filing suit in this Court, and thus, the ADA claims must be dismissed.

The undersigned agrees. There is no evidence Plaintiff has filed a timely complaint through the Department of Education or exhausted as required before bringing this action. The undersigned **RECOMMENDS**, in accordance with the ADA and its regulations, that Defendants' Motion to Dismiss [ECF No. 12] be **GRANTED** due to Plaintiff's failure to first exhaust administrative remedies related to the age discrimination claims.

3. *Failure to State a Claim*

Furthermore, in support of his claim for age discrimination, Plaintiff states "it is the Plaintiff's *opinion* that Dr. Ryan implemented these actions due to him being a much older student, which constitutes age discrimination . . . Plaintiff *feels* that his age is a direct cause of Dr. Ryan's actions, performing her own investigations and accusing him of doing something wrong by asking female students to be part of his film project." [ECF No. 1 at 7 (emphases added)].

A complaint must include factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Conclusory statements of feelings and opinions alone are not sufficient. There are no factual allegations in the Complaint that support a reasonable inference of discrimination by Defendants. Plaintiff's feelings and opinions, no matter how sincere, are insufficient for the purposes of Rule 12(b)(6). Therefore, in addition to Plaintiff's failure to first exhaust administrative remedies, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss [ECF No. 12] be **GRANTED** to the extent that Plaintiff's allegations of age discrimination fail to state a claim upon which relief may be granted.

**C. The undersigned recommends Plaintiff's Title VI racial discrimination claims be dismissed because of his failure to allege enough facts to state a claim to relief that is plausible on its face, and further, Dr. Ryan is not a proper Defendant under the Act.**

In Paragraph 23 of the Complaint, Plaintiff asserts a claim of racial discrimination in violation of 34 C.F.R. § 100.

Title VI of the Civil Rights Act of 1964 ("Title VI") provides "No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 § U.S.C. 2000d, et seq. This regulation, 34 C.F.R. § 100, was promulgated in order to effectuate the provisions of Title VI, "to the end that no person in the United States shall; on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Education." 34 C.F.R. § 100.1. The immunity conferred upon the states by the Eleventh Amendment does not apply to violations of Title VI. 42 U.S.C § 2000d–7(1); Franks v. Kentucky School for the Deaf, 142 F.3d 360, 362–63 (6th Cir. 1998).

The purpose of Title VI is two-fold: "[f]irst, Congress wanted to avoid the use of federal resources to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). "To prevail on a claim under Title VI, a plaintiff must prove that the defendant received federal financial assistance and that the defendant engaged in intentional discrimination based on race, color, or national origin." Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 844 (D.S.C. 2015) (citing Alexander v. Sandoval, 532 U.S. 275, 280 (2001)).

*1.   Failure to State a Claim*

In support of his claim for racial discrimination, Plaintiff states "Plaintiff *feels* that if he were not African American, Dr. Ryan's actions would have been different, and she would not have taken any actions at all." [ECF No. 1, at 7 (emphasis added)]. Plaintiff then immediately concludes "This constitutes racial discrimination." Id. However, a complaint must include factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

As with Plaintiff's age discrimination claim, there are no factual allegations in the Complaint that support a reasonable inference of discrimination by Defendants. As stated above, Plaintiff's feelings and opinions, no matter how sincere, are insufficient for the purposes of Rule 12(b)(6). Therefore, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss [ECF No. 12] be **GRANTED** to the extent that Plaintiff's Title VI claim fails to state a claim upon which relief may be granted.

*2.   Proper Defendant – Title VI*

Generally, "the proper defendant in a Title VI case is an entity rather than an individual." Farmer v. Ramsay, 41 F. Supp. 2d 587, 592 (D. Md. 1999) (citing Jackson v. Katy Independent School District, 951 F.Supp. 1293 (S.D.Tex.1996)). See also Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1356 (6th Cir.1996) ("Plaintiff's claim ... fails because she asserts her claim against [individuals] and not against the school, the entity allegedly receiving financial assistance."). A "program or activity" for the purposes of Title VI is defined as "all the operations of" a "department, agency, . . . or other instrumentality of a State or of a local government." 42 U.S.C. § 2000d–4a(1)(A).

Dr. Ryan, of course, is an individual rather than an entity, a "program or activity . . . receiving federal financial assistance." Even in her official capacity as a public university professor, she is not the proper defendant for a Title VI claim. Even though Plaintiff did not put forth facts or events in his Complaint sufficient for a plausible claim of intentional racial discrimination, the undersigned would also note that a claim against Dr. Ryan, in the context of the facts alleged, is not cognizable under Title VI.

**D. The undersigned recommends Plaintiff's defamation claim be dismissed because the claim is time-barred and Plaintiff has failed to state a claim upon which relief can be granted.**

In Paragraph 24 of the Complaint, Plaintiff asserts a claim of defamation, arguing that Dr. Ryan's actions caused his reputation to suffer both at WVU and in that particular class. Defendants correctly argue, however, that Plaintiff's defamation claim should be dismissed because it is time-barred by the statute of limitations and the Complaint fails to state a claim for defamation upon which relief can be granted.

*1. Statute of Limitations*

A cause of action for defamation has a statute of limitations of one year, pursuant to W. Va. Code § 55-2-12(c). Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter, 795 S.E.2d 530, 545-546 (W. Va. 2016). A defamation action accrues when the "fact of defamation becomes known, or reasonably should have become known, to plaintiff." Padon v. Sears, Roebuck & Co., 411 S.E.2d 245, 248 (W. Va. 1991). The statute of limitations may be extended for a period of one year following a dismissal or reversal of a judgment. W. Va. Code § 55-2-18. To meet the eligibility requirements of the extension statute, the initial pleading must be timely filed and "(i) The action was involuntarily dismissed for any reason not based upon the merits of the action; or (ii) the

judgment was reversed on a ground which does not preclude a filing of new action for the same cause." Id.

Plaintiff alleges in his Complaint that Dr. Ryan informed him about "false statements made against Plaintiff about 'pressuring' the female students to be part of a film project." [ECF No. 1, at 4 and 7]. Dr. Ryan's statements to Plaintiff relaying these allegedly "false statements" occurred in "early March 2020" and are the source of his defamation action [Id. at 3]. Consequently, Plaintiff became aware of the defamatory statements made against him in early March 2020, meaning that Plaintiff would have needed to file his defamation claim against Defendants by early March 2021. While Plaintiff filed his initial complaint on March 15, 2021, this initial complaint did not include Plaintiff's defamation claim against Defendants. The defamation claim was first brought to the attention of the Court on March 20, 2023, when Plaintiff's Complaint was filed in the case at hand. [ECF No. 1].

Plaintiff's defamation claim comes two years too late and does not meet the extension statute's requirements to extend the statute of limitations. Plaintiff did not refile his Complaint until March 20, 2023; Plaintiff's initial complaint was dismissed on March 17, 2022. Young v. West Virginia University, No. 1:21-cv-35, 2022 WL 816041 (N.D.W. Va. Mar. 17, 2022). Plaintiff's untimely filing of his present Complaint exceeds the one-year extension that would have been afforded by the extension statute. Regardless, Plaintiff's present Complaint further does not fall under the extension statute because the defamation claim was not raised in his initial complaint. The undersigned thus **RECOMMENDS** that the Defendants' Motion to Dismiss [ECF No. 12] be **GRANTED** as to the defamation claim, due to the time-barred status of Plaintiff's defamation claim.

2.  *Failure to State a Claim*

Furthermore, Plaintiff's defamation claim fails to meet the elements of a defamation claim upon which relief can be granted. To state a claim of defamation, Plaintiff must allege "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Belcher v. Wal-Mart Stores, Inc., 568 S.E.2d 19, 26 (W. Va. 2002) (citation and quotation omitted). Plaintiff's claim of defamation fails to meet the second element of a nonprivileged communication to a third party for two reasons.

First, Plaintiff alleges that Dr. Ryan made a defamatory statement to *him alone*. [ECF No. 1, at 3-4]. Publication and communication to a *third party* is an essential element of defamation "because the essence of the tort is diminution of one's reputation in the eyes of others, and unless the defamatory matter is communicated to a third person, there has been no diminution of reputation." Belcher, 568 S.E.2d at 27. Plaintiff fails to specify any defamatory false statements that Dr. Ryan published such that a reputation harm occurred. A defamation claim does not exist where a communication occurs only between Plaintiff and Defendant, with no third party also subject to the alleged defamatory statement.

Second, any communications Dr. Ryan may have made about this situation to WVU's Title IX Coordinator also would not satisfy Plaintiff's defamation claim, as these communications are privileged. Qualified privilege "exists when a person publishes a statement in good faith about a subject in which [she] has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219, 227 (1994) (citation and quotation omitted). Qualified privilege can be overcome by bad motive. Id.

24

In the case at hand, statements Dr. Ryan allegedly made to WVU's Title IX Coordinator would fall within this established qualified privilege because any statements Dr. Ryan made were done so in good faith based upon a duty to report incidents on behalf of third parties, such as students. Further, Dr. Ryan limited these communications to an individual with a legitimate interest in potential incidents of sexual harassment—WVU's Title IX Coordinator. Thus, any communications Dr. Ryan may have made regarding this situation to WVU's Title IX Coordinator would be privileged and fail to satisfy the second element of Plaintiff's defamation claim. Therefore, in addition to Plaintiff's failure to file his defamation claim before the statute of limitations lapsed, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss [ECF No. 12] be **GRANTED** to the extent that Plaintiff's allegations of defamation fail to state a claim upon which relief may be granted.

## VI.   RECOMMENDATIONS

For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Leave to File Amended Complaint [ECF No. 15] be **DENIED**. Additionally, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [ECF No. 12] be **GRANTED**, and the Plaintiff's Complaint [ECF No. 1] be **DISMISSED with prejudice**.[1]

Any party shall have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of

---

[1] The undersigned recommends dismissal with prejudice given Plaintiff's previous unsuccessful attempts to litigate issues in Case No. 1:21-CV-35, which are the same or very similar to the ones raised in the instant matter.

such objections should also be submitted to the presiding District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to send a copy of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, and to *pro se* Plaintiff by certified mail, return receipt requested.

Respectfully submitted on August 8, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE